# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

ROGERIO CHAVES SCOTTON,

    Petitioner,

v.

WARDEN TRACY JOHNS,

    Respondent.

CIVIL ACTION NO.: 5:16-cv-40

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Rogerio Chaves Scotton ("Scotton"), who is currently detained at D. Ray James Correctional Facility in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Scotton also filed four Motions for Protective Order, (docs. 7, 9, 12, 18), and a Motion to Compel Respondent to Respond to Petitioner's Section 2241 Petition, (doc. 22). Respondent filed a Response to Scotton's Petition, (doc. 17), and Scotton filed a Reply to Respondent's Response, (doc. 26). For the reasons which follow, I **RECOMMEND** the Court **DENY** Scotton's Motions for Protective Order, (doc. 7, 9, 12, 18). I further **RECOMMEND** the Court **DISMISS** Scotton's Petition, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Scotton *in forma pauperis* status on appeal. The Court **DISMISSES as moot** Scotton's Motion to Compel Respondent to Respond, (doc. 22).

## BACKGROUND

Scotton was convicted in the Southern District of Florida, after a jury trial, of mail fraud and making a false statement, in violation of 18 U.S.C. §§ 1341 and 1001(a)(2). J., United States v. Scotton, No. 0:12-cr-60049 (S.D. Fla. May 12, 2014), ECF No. 413. He was sentenced to 108

months' imprisonment on May 9, 2014. Id. Scotton has a projected release date of March 18, 2020, via good conduct time release, to be followed by three years' supervised release. (Doc. 17-1, p. 2.)

## DISCUSSION

Scotton makes several allegations throughout this Petition concerning his custody at D. Ray James Correctional Facility. First, Scotton alleges that that he is entitled to 54 days of good conduct time ("GCT") per year instead of the 42 days' GCT he is receiving.[1] Second, Scotton alleges that he has not received proper medical care at D. Ray James Correctional Facility, which has caused permanent damage to his left leg and constant back pain. (Doc. 1, pp. 7–8.) Third, Scotton contends that D. Ray James staff subjected him to cruel and unusual punishment in retaliation for exercising his constitutional rights.[2] (Id. at p. 8.) Finally, Scotton contends that he should be transferred to a safer facility closer to his family in Florida. (Id. at p. 7.)

Respondent contends that Scotton did not properly exhaust his administrative remedies as to his claim that he is entitled to 54 days of GCT, and therefore, cannot pursue that claim in this action. (Doc. 17, p. 6.) Respondent next argues that Scotton's medical care claims, cruel and unusual punishment claims, and request for transfer are not cognizable under 28 U.S.C. § 2241. (Id.)

---

[1] Pursuant to 18 U.S.C. § 3624(b)(1), the literacy program allows inmates to receive 54 days' credit for each year served if the inmate has earned or is making satisfactory progress toward earning a GED credential or high school diploma. However, if the inmate has not earned or is not making satisfactory progress toward earning a GED credential or high school diploma, the inmate is eligible for only 42 days' credit for each year served. 28 C.F.R. § 523.20(c). Respondent avers that Scotton has been awarded only 42 days' credit for each year served because he withdrew from the literacy program. Scotton concedes that he is not making satisfactory progress toward earning a GED credential or high school diploma but contends that he need not obtain a GED because he is a graduate of Florida Atlantic University, as well as a Brazilian university. (Doc. 26, p. 2.)

[2] Specifically, Scotton contends that D. Ray James staff abuses him physically and mentally, threatens to place him in solitary confinement, and attempts to force him into slave labor. (Doc. 1, p. 8.)

Scotton replies that exhaustion of his claims is futile because "any grievance against [D. Ray James Correctional Facility] [is] never responded [to] or is ignored." (Doc. 26, p. 6.) Scotton further avers that the Court should waive the exhaustion requirement because "there is no[ ] requirement of exhausting remedies [for violations of due process] by a for-profit private company." (Id.)

### I. Petitioner's Motion to Compel, (Doc. 22)

Scotton filed a Motion to Compel Respondent to Respond to Petitioner's Section 2241 Petition on September 6, 2016. (Doc. 22.) Within that Motion, Scotton concedes that Respondent filed a Response to his Petition on July 28, 2016, (doc. 17), but contends that he never received a copy of that Response. However, Scotton filed a Reply to Respondent's Response to his Section 2241 Petition on October 14, 2016. (Doc. 26.) Accordingly, despite his contentions to the contrary, it is evident that Respondent filed a Response to Scotton's Petition and Scotton received that Response. Therefore, the Court **DISMISSES as moot** Scotton's Motion to Compel.

### II. Petitioner's Motions for Protective Order, (docs. 7, 9, 12, 18)

Scotton also filed, in addition to his Section 2241 Petition, four motions labeled as "Motions for Protective Order," (docs. 7, 9, 12, 18), which the Court construes as Motions for a Preliminary Injunction.[3] Within those Motions, Scotton avers that staff at D. Ray James issued

---

[3] "Federal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category." Retic v. United States, 215 F. App'x 962, 964 (11th Cir. 2007) (quoting Castro v. United States, 540 U.S. 375, 381 (2003)). Federal courts "may do so in order to avoid an unnecessary dismissal, to avoid inappropriately stringent application of formal labeling requirements, or to create a better correspondence between the substance of a pro se motion's claim and its underlying legal basis." Id. (quoting Castro, 540 U.S. at 381–82). Although Scotton labels his motions as "motions for protective order," a review of those pleadings reveals that he is requesting that the Court enjoin Respondent from retaliating against Scotton for filing grievances and a civil action. (Doc. 7, p. 1.) Accordingly, Scotton's motions are properly classified as Motions for a Preliminary Injunction, as opposed to Motions for a Protective Order.

him false disciplinary reports and punished him for offenses he did not commit in response to his filing of grievances and this civil action. (Doc. 7, p. 2.) Scotton further alleges that D. Ray James staff violated his due process rights during the disciplinary hearings regarding his alleged infractions and that he received punishment, in contravention of the Eighth Amendment's proscription against cruel and unusual punishment.[4] Scotton requests that this Court enjoin Defendants from retaliating against him and requests that the Court issue an order transferring him to another facility closer to his family. (Doc. 7, p. 1; Doc. 18, p. 4.)

To be entitled to a preliminary injunction, the movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) an injunction or protective order is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the injunction or protective order would inflict on the non-movant; and (4) the injunction or protective order would not be adverse to the public interest. Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005). In this Circuit, an "injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites." Horton v. City of Augustine, 272 F.3d 1318, 1326 (11th Cir. 2001).

If a petitioner succeeds in making such a showing, then "the court may grant injunctive relief, but the relief must be no broader than necessary to remedy the constitutional violation." Newman v. Alabama., 683 F.2d 1312, 1319 (11th Cir. 1982). Accordingly, where there is a constitutional violation in the prison context, courts traditionally are reluctant to interfere with prison administration, unless there is a clear abuse of discretion. See Procunier v. Martinez, 416 U.S. 396, 404–05 (1974) ("Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration [because] . . . courts are ill equipped to deal with the

---

[4] Scotton claims that, as part of their campaign of retaliation, D. Ray James prison staff also denied him medical care for sciatic nerve pain and back pain, causing "permanent injury [to] his left leg . . . [and causing] excruciating pain 24 hours [per] day." (Doc. 7, p. 10.)

increasingly urgent problems of prison administration and reform."), *overruled on other grounds by* Thornburgh v. Abbott, 490 U.S. 401 (1989). In such cases, "[d]eference to prison authorities is especially appropriate." Newman, 683 F.2d at 1320–21 (reversing district court's injunction requiring release of prisoners on probation because it "involved the court in the operation of the State's system of criminal justice to a greater extent than necessary" and less intrusive equitable remedy was available).

Scotton has not shown that he has satisfied the prerequisites in order to be entitled to a preliminary injunction. Specifically, Scotton has not shown the likelihood of success on the merits of his claims or that injunctive relief is necessary to prevent irreparable injury. For example, Scotton has vigorously pursued this legal action, despite his contention that prison staff is retaliating against him for doing so. Furthermore, because Scotton requests that the Court order his transfer to another facility—a matter squarely within the realm of prison administration—an order or injunction granting such relief on this record would be broader and more intrusive than necessary to remedy any potential constitutional violation. Therefore, I **RECOMMEND** the Court **DENY** Scotton's Motions for a Preliminary Injunction. (Docs. 7, 9, 12, 18.)

### III. Whether Scotton Presents Claims Which can be Addressed by a Writ of Habeas Corpus

Despite Scotton's characterization of his pleading as one made pursuant to 28 U.S.C. § 2241, several of the claims he sets forth fall outside the purview of that statute. Specifically, his claims that he has not received proper medical care and that he was subjected to cruel and unusual punishment in retaliation for exercising his constitutional rights would ordinarily be brought pursuant to 28 U.S.C. § 1331 and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). The distinction between claims which may be

brought under Bivens and those which must be brought as habeas petitions is reasonably well-settled. Claims in which federal prisoners assert that they are being subjected to unconstitutional punishment not imposed as part of their sentence are Bivens actions, not habeas actions. See, e.g., Farmer v. Brennan, 511 U.S. 825 (1994). Habeas actions, in contrast, explicitly or by necessary implication challenge a prisoner's conviction or the sentence imposed on him by a court (or under the administrative system implementing the judgment). Thus, for example, when a prisoner makes a claim that, if successful, could shorten or invalidate his term of imprisonment, the claim must be brought as a habeas petition, not as a Bivens claim. See, e.g., Edwards v. Balisok, 520 U.S. 641 (1997); Heck v. Humphrey, 512 U.S. 477 (1994).

Scotton cannot bring several claims he asserts via a habeas petition. Specifically, his claims concerning deliberate indifference to his serious medical needs and cruel and unusual punishment under the Eighth Amendment, as well as his claims of retaliation under the First Amendment, are not cognizable pursuant to 28 U.S.C. § 2241. Moreover, as to these claims, he does not seek to challenge his sentence or conviction or the duration of his confinement. Accordingly, the Court should **DISMISS** these portions of Scotton's Petition without prejudice.

**IV.  Whether the Court Should Recharacterize Scotton's Claims**

As noted above, "[f]ederal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category." Retic v. United States, 215 F. App'x at 964 (quoting Castro, 540 U.S. at 381). This Court may "recharacterize a *pro se* litigant's motion to create a better correspondence between the substance of the motion and its underlying legal basis." Rameses v. United States District Court, 523 F. App'x at 694. Federal courts "may do so in order to avoid an unnecessary dismissal, to avoid inappropriately stringent application of formal labeling requirements, or to

create a better correspondence between the substance of the motion and its underlying legal basis." Id. (quoting Castro, 540 U.S. at 381–82).

However, it would be futile, and thus, improper to recharacterize Scotton's non-habeas claims as a Bivens action. The United States Supreme Court has held that a federal prisoner cannot bring a Bivens claim against employees of a privately operated federal prison when state law authorizes adequate alternative actions.[5] Minneci v. Pollard, ___ U.S. ___, 132 S. Ct. 617 (2012). The Court stated that "in the case of a privately employed defendant, state tort law provides an 'alternative, existing process' capable of protecting the constitutional interests at stake." Id., 132 S. Ct. at 623 (quoting Wilkie v. Robbins, 551 U.S. 537, 559 (2007)) (declining to extend Bivens liability to allow a landowner to pursue a private action against employees of the Bureau of Land Development); Goia v. CitiFinancial Auto, 499 F. App'x 930, 936 (11th Cir. 2012) ("[T]he Supreme Court has declined to expand Bivens to encompass a suit against private corporations acting under color of federal law.") (citing Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 71, 74 (2001)). The Court can only recognize a Bivens action if: (1) there are no adequate alternative remedies under state or federal law; and (2) no "special factors" counsel against implying a cause of action. Robles v. Kane, 550 F. App'x 784, 787 (11th Cir. 2013). State tort law remedies are adequate when they provide roughly similar incentives for defendants to comply with the constitutional right at issue while also providing roughly similar compensation to victims of violations. Minneci, 132 S. Ct. at 625. The Eleventh Circuit Court of Appeals has held that, at least as to some claims, Georgia tort law provides federal prisoners held in privately-run facilities "arguably better remedies than a Bivens claim." Robles, 550 F. App'x at 788.

---

[5] In the Eleventh Circuit such a claim has been foreclosed since 2008. See Alba v. Montford, 517 F.3d 1249 (11th Cir. 2008) (declining to extend Bivens to cover a claim for deliberate indifference to medical needs against Corrections Corporation of America, a private facility under contract with the Bureau of Prisons, and its employees).

D. Ray James is a private entity that operates under a contract with the Bureau of Prisons. The employees of D. Ray James are employees of The GEO Group, Inc., a private entity. Thus, like the plaintiffs in Minneci and Alba, so long as Scotton has adequate state law remedies available to him, he may not maintain a cause of action pursuant to Bivens against The GEO Group, Inc., or its employees.

Georgia tort law provides Scotton such alternative remedies. For instance, he may pursue his claims that he was denied medical care in state court through a claim of medical malpractice. See O.C.G.A. § 9-3-70 ( "medical malpractice" includes all claims "arising out of" "[h]ealth, medical, dental, or surgical service, diagnosis, prescription, treatment, or care"); O.C.G.A. § 51-1-27 ("A person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from a want of such care and skill shall be a tort for which a recovery may be had.") In fact, Scotton possesses an "arguably superior" cause of action in state court, because, unlike in a Bivens action, he can pursue state remedies under a theory of *respondeat superior*. See O.C.G.A. § 51-2-2; Alba, 517 F.3d at 1256, n.7.

Moreover, Scotton's other claims can be addressed through state law. As Magistrate Judge Brian K. Epps of this Court explained in the face of claims brought by a prisoner in a private facility,

> To the extent Plaintiff's claims do not fall under the traditional rubric of medical malpractice, Plaintiff could also bring his claims under Georgia negligence law. Georgia negligence law provides that a plaintiff may recover for emotional distress without a showing of physical injury if the defendant's conduct was malicious, willful, or wanton and directed toward the plaintiff. Jordan v. Atlanta Affordable Hous. Fund, Ltd., 498 S.E.2d 104, 106 (Ga. Ct. App. 1998). This standard requires conscious indifference to the consequences of one's actions. Brooks v. Gray, 585 S.E.2d 188, 189 (Ga. Ct. App. 2003). This is remarkably similar to the standard for deliberate indifference under the Eighth Amendment which requires subjective recklessness on the part of prison officials. Farmer v.

> Brennan, 511 U.S. 825, 839 (1994). Given the similar alignment of the Eighth Amendment standard and Georgia's negligence law for nonphysical injuries, Georgia tort law provides similar incentives for defendants to comply with the Eighth Amendment in addition to superior compensation in the form of *respondeat superior.*

Galloway v. CCA Mcrae Corr. Facility, No. CV 314-067, 2016 WL 4197588, at *3 (S.D. Ga. Aug. 8, 2016), *report and recommendation adopted*, No. CV 314-067, 2016 WL 4535372 (S.D. Ga. Aug. 30, 2016); see also Cottrell v. Smith, 788 S.E.2d 772, 780 (Ga. 2016) (Georgia recognizes claim for intentional infliction of emotional distress where: (1) defendant's conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress was severe.); Robles, 550 F. App'x at 787–88 (Georgia law provides adequate remedy for interference with prisoner's legal mail); Poole v. Streiff, No. CIV. A. 07-0749-KD-C, 2008 WL 2699420, at *3 (S.D. Ala. June 30, 2008) (Plaintiff had adequate state law remedies under Alabama law for negligence and wantonness for claims he was sent to solitary confinement); Robles v. Bureau of Prisons, No. CV511-120, 2012 WL 488080, at *2 (S.D. Ga. Jan. 23, 2012), *report and recommendation adopted*, No. CV 511-120, 2012 WL 484076 (S.D. Ga. Feb. 14, 2012) (dismissing claims food was nutritionally inadequate, citing Alba).

Scotton cannot bring a Bivens action against defendants such as Warden Tracy Johns. Rather, Plaintiff's remedy, if any, against Defendant lies in state court. For all of these reasons, the Court should **DISMISS** Scotton's claims that he has not received proper medical care and that he was subjected to cruel and unusual punishment in retaliation for exercising his constitutional rights.

### V. Whether Scotton Exhausted his Administrative Remedies

Because Scotton's claims arising under the First and Eighth Amendments are not cognizable under 28 U.S.C. § 2241, Plaintiff's only remaining claim is his entitlement to 54 days of GCT. However, for the reasons discussed below, Scotton failed to exhaust his administrative remedies as to that claim. Accordingly, the Court should dismiss Scotton's 28 U.S.C. § 2241 Petition.

#### A. Legal Requirements for Exhaustion

The Eleventh Circuit has held that a Section 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d at 475). Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). Additionally, the Supreme Court recently "held that the PLRA's ["Prison Litigation Reform Act's"] text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, ___ U.S. ___, 2016 WL 3128839, at *5 (June 6, 2016).

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[6]

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To

---

[6] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

11

exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B. D. Ray James Correctional Facility's Grievance Procedure

Inmates at D. Ray James must exhaust administrative remedies, beginning their grievance process locally with the Warden by using the contractor's grievance procedures. (Doc. 17-1, p. 48.) This involves an attempt at informal resolution, which, if unsuccessful, is followed by a formal complaint via a Step 1 administrative remedy form within twenty (20) days of the informal resolution request. (Id.) An inmate may appeal the Step 1 administrative remedy to the Warden via a Step 2 administrative remedy form within five business days after the Step 1 response is returned. (Id. at p. 49.) If the inmate is not satisfied with the resolution of the formal complaint, the inmate may appeal to the BOP's Administrator of the Privatization Management Branch, so long as the appeal involves BOP-related matters.[7] (Id. at p. 50.) If the inmate is not satisfied with the Privatization Administrator's response, the inmate may make a final appeal to the BOP's Office of General Counsel. (Id.) If an inmate files an administrative remedy concerning a BOP-related matter, the administrative remedies will be recorded in the BOP's SENTRY computer database. (Id. at p. 5.)

---

[7] Examples of BOP-related matters which must be appealed through the BOP are: sentence computations, reduction in sentences, removal or disallowance of good conduct time, participation in certain programs, and an inmate's eligibility for early release. Pichardo v. Zenk, CV511-69, 2011 WL 5102814, at *2 n.4 (S.D. Ga. Sept. 27, 2011), *adopted by* 2011 WL 5103758 (Oct. 26, 2011).

### C. Standard of Review for Exhaustion

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies.[8] First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in

---

[8] Although Turner involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in Turner would be no less applicable to a Section 2241 proceeding. See McCoy v. Glidewell, No. 4:11-cv-1683-JFA-TER, 2012 WL 3716872, at *5 (D.S.C. June 18, 2012) (noting Section 2241's exhaustion requirements and Turner's application of exhaustion standards to a Section 2241 petition).

13

conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

### D. Analysis of Scotton's Efforts at Exhaustion

In his Reply to Respondent's Response, Scotton implicitly concedes that he failed to exhaust administrative remedies, contending that "there is no[ ] requirement [to exhaust administrative remedies] w[h]ere [the claim concerns a violation of due process] by a for profit private company," the claim concerns an illegally modified sentence, and "the administrative body is show[n] to be biased." (Doc. 26, p. 6.) Thus, accepting Plaintiff's version of facts as true, under the first Turner step, he failed to exhaust D. Ray James Correctional Facility's administrative remedies.

However, Scotton further argues that he was prevented from properly exhausting administrative remedies, through no fault of his own, due to D. Ray James staff's failure to respond to his administrative remedy requests. (Id.) Nevertheless, Plaintiff's claims of unavailability wither when subjected to the crucible of examination the second Turner step requires. Again, under that step, the Court resolves any disputed factual issues and then assesses, under those findings, whether the prisoner has exhausted his available administrative remedies. Turner, 541 F.3d 1083.

Though the Supreme Court rejected a "special circumstances" exception to exhaustion in Ross v. Blake, ___ U.S. ___, 2016 WL 3128839, at *5 (June 6, 2016), it reiterated that a prisoner need only exhaust those remedies which were available to him. ___ U.S. ___ 2016 WL 3128839, at *7 ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.") The Court recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."

Id. First, the Court stated that, in some instances, the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Thus, if the administrative procedure lacks authority or if the officials with apparent authority "decline ever to exercise it," the inmate has no obligation to exhaust the remedy. Id. Second, when administrative remedies are so confusing that they are "essentially 'unknowable,'" exhaustion is not required. Id., ___ U.S. ___, 2016 WL 3128839, at *8 (citing Goebert v. Lee Cty., 510 F.3d 1312, 1323 (11th Cir. 2007), and Turner, 541 F.3d at 1084). Lastly, exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. However, the Supreme Court recognized that, "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise." Id., ___ U.S. ___, 2016 WL 3128839, at *7.

Construing Scotton's claims liberally, he arguably alleges that D. Ray James Correctional Facility officers were "unable or consistently unwilling to provide any relief to aggrieved inmates." Ross, ___ U.S. ___, 2016 WL 3128839, at *8. In support of Scotton's claim that he exhausted the administrative remedies available to him, but was prevented from properly exhausting administrative remedies, Scotton submitted what appear to be Step 2 Administrative Remedy forms dated October 30, 2015, and November 15, 2015. (Doc. 26-1, pp. 12–13.) However, nothing on these forms indicates staff received them or that Scotton otherwise pursued the administrative remedies process beyond his drafting of these forms. Moreover, the Court doubts the authenticity of the administrative remedy records submitted by Scotton. For example, although Scotton dated his "Inmate Request to Staff" form October 12, 2015, the staff member signature line, dated January 13, 2015, predates Scotton's signature. (Id. at p. 14.)

In comparison, evidence submitted by Respondent—specifically, Scotton's Administrative Remedy Generalized Retrieval history—indicates Scotton has filed administrative remedy requests regarding only his inadequate medical assistance claim and claims regarding legal mail and discriminatory housing since he has been incarcerated based on his federal sentence. (Doc. 17-1, pp. 21, 22.) Absent from Scotton's administrative grievance filing history is any record that he submitted grievances concerning his entitlement to 54 days of GCT. In addition, Vincent Shaw, Senior Litigation Counsel with the Bureau of Prisons' Southeast Regional Office, confirms that Scotton's "Administrative Remedy Generalized Retrieval indicates that [he] has not filed any administrative remedies concerning [the GCT claims in his Petition]." (Id. at p. 7.) Furthermore, contrary to Scotton's claim that D. Ray James staff ignores his grievances, his administrative remedy history reveals that the BOP rejected the remedy regarding his inadequate medical assistance claim for incompleteness. (Id. at p. 6.) Scotton never refiled the remedy regarding that claim, nor did he pursue an administrative remedy to the Office of General Counsel. (Id. at p. 6.) In general, Scotton's history of filing grievances reveals that D. Ray James administrative remedies were available to him but that he simply failed to pursue those remedies as to his claim of GCT.

The Court finds this evidence more credible than Scotton's unsupported and conclusory allegations that D. Ray James staff ignored his GCT claims. Thus, Scotton failed to file an administrative remedy as to his claims that he is entitled to 54 days of GCT. As set forth in footnote 7 of this Report, Scotton's claims concern BOP-related matters which must be appealed through the above-described process, which Scotton failed to do. Additionally, based on Respondent's submissions, it appears that the BOP's administrative remedies are available to Scotton, despite any contentions he may raise to the contrary.

16

In sum, Plaintiff filed this lawsuit without ever alerting prison officials to the facts underlying his claims that he is entitled to 54 days of GCT. An inmate must do more to resolve his dispute within the literal walls, or at least the figurative walls, of the prison system before seeking relief in the halls of the courthouse. Consequently, the Court should **DISMISS** Scotton's claims regarding his award of GCT for failure to exhaust.

## VI. Leave to Appeal *in Forma Pauperis*

The Court should also deny Scotton leave to appeal *in forma pauperis.* Though Scotton has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . . may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]") (italics supplied). An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of the Scotton's Petition, the Court should **DENY** Scotton *in forma pauperis* status on appeal, as there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Scotton's Motions for Protective Order, (doc. 7, 9, 12, 18). I further **RECOMMEND** the Court **DISMISS** Scotton's Petition, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Scotton *in forma pauperis* status on appeal. The Court **DISMISSES as moot** Scotton's Motion to Compel Respondent to Respond, (doc. 22).

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Scotton and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 12th day of January, 2017.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA